[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10876
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cv-01756-AKK


SHIRLEY HUNTER,

Plaintiff - Appellant,

versus

UNITED STATES POSTAL SERVICE,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 4, 2013)

Before MARCUS, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Shirley Hunter, proceeding *pro se*, appeals the district court's grant of

summary judgment in favor of her former employer, the United States Postal

Service ("USPS"), on her removal and discharge claims under the Rehabilitation Act, 29 U.S.C. § 794.[1]   After careful review, we affirm.

I.

In July 2001, Hunter was badly injured in a car accident while delivering mail on her USPS route in Leeds, Alabama.  She suffered a fractured hip and pelvis, lacerations, and head trauma, and was unable to return to work for some time.  As a result, she received worker's compensation benefits under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8152, from the Department of Labor's Office of Workers' Compensation Programs ("OWCP").  FECA compensates partially disabled employees so long as the disability persists, unless the employee refuses to work after the employer offers a suitable position.  *See id.* § 8106(a), (c).  By December 2001, Hunter had recovered enough to return to the USPS in a part-time clerk position, supervised by Laura Newby, the Leeds Postmaster.  Her workers' compensation was reduced accordingly.

In June 2002, Hunter's physical therapist evaluated her and determined she was "capable of sustaining light demand level work up to an eight hour day."  This included lifting up to 20 pounds, frequent sitting, standing, kneeling, climbing steps, and walking, as well as occasional stooping, repetitive squatting, and

---

[1] The district court also granted summary judgment in favor of the USPS on Hunter's claim under the Americans with Disabilities Act ("ADA"). Hunter has expressly abandoned that claim on appeal.

2

repetitive trunk rotation. Accordingly, the therapist recommended Hunter return to work with accommodations for the restrictions he identified. In August, Hunter's physician agreed with these findings and concluded that Hunter could return to work full-time so long as the USPS accounted for her limitations.

In October 2002, Newby extended Hunter a "Limited Duty Job Offer" for a clerk position working eight hours per day, which Hunter accepted. Meanwhile, a USPS injury compensation manager worked with Newby to make accommodations to bring Hunter's original mail-carrier position within her restrictions. The two decided such accommodations were practicable and, in June 2003, the USPS extended Hunter a "Permanent Job Accommodation," which would return her to her mail-carrier position but would include accommodations. Hunter refused the offer, and the OWCP ultimately deemed that offer – as well as a subsequent one that Hunter also rejected – inadequate because it failed to describe in sufficient detail the accommodations planned. At that point, the USPS placed Hunter on administrative leave. Then, in February 2004, Linda Hollis, another USPS employee who had served as a part-time clerk, was selected to serve as a permanent clerk. In June 2005, the USPS again offered Hunter permanent modified employment in her original mail-carrier position. This time, the OWCP reviewed the offer and deemed it suitable under FECA. Hunter, however, refused

3

the offer once again.  Because Hunter refused the offer, OWCP held a hearing and then terminated her FECA benefits.  *See* 5 U.S.C. § 8106(c).

In October 2005, the USPS sent Hunter a notice to report to work.  When Hunter did not report, the USPS sent her a notification of removal from employment dated December 15, 2005.  Hunter contacted the Equal Employment Opportunity Commission ("EEOC") on March 17, 2007.  Her termination from the USPS became final on April 12, 2007.  Four days later, Hunter submitted a formal EEO complaint, arguing she was discriminated against based on physical disability when she was "issued a Notice of Removal for Failure to Maintain a Regular Work Schedule."  The EEOC issued Hunter a right-to-sue letter on this claim.

Hunter then filed her complaint in the district court, alleging the USPS discriminated against her in violation of the Rehabilitation Act by (1) "remov[ing] her from her accommodated position due to her disability" and "award[ing the position] to a non-disabled comparator," Linda Hollis; and (2) terminating her due to her disability.  The district court rendered summary judgment on these claims in favor of the USPS.  This is Hunter's appeal.

## II.

We review *de novo* the district court's grant of summary judgment. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We draw all factual inferences in a light most favorable to the non-moving party."  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

"The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability."  *Id.* at 1344 (internal quotation marks omitted).  "The remedies, procedures, and rights of Title VII are available to plaintiffs filing complaints under the Rehabilitation Act."  *Id.*

"To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that (1) [s]he has a disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of [her] disability."  *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999).  Under the Rehabilitation Act, as under Title VII, "federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act," or, "[w]hen the discriminatory act results in a personnel action, . . . 'within 45 days of the effective date of the action.'"  *Shiver*, 549 F.3d at 1344 (quoting 29 C.F.R. § 1614.105(a)(1)).  When a plaintiff fails to initiate EEO contact within this period, her claim is generally barred for failure to exhaust remedies.  *Id.*  And although we apply equitable tolling rules to the deadlines, we toll them only sparingly, such as when a plaintiff has actively pursued remedies but

5

filed a defective timely pleading or when she was induced or tricked by her employer's misconduct into allowing the deadline to pass. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

### III.

Here, the Rehabilitation Act's administrative exhaustion requirement bars Hunter's claim that she was removed from her clerk position and replaced by Linda Hollis, a non-disabled employee. Hollis took over as a full-time clerk in February 2004, more than three years before Hunter initiated EEOC contact. And equitable tolling of the Act's 45-day time period for contact is not warranted in this case. There is no evidence in the record that the USPS induced or tricked Hunter into allowing the deadline to pass or that she otherwise tried to initiate contact. *See Irwin*, 498 U.S. at 96. Instead, Hunter relies on the fact that the USPS "sent her home" when she rejected its June 2003 offer and contends she should not be held responsible for learning what transpired at the post office while she was away. Without more, this is insufficient to permit us to toll the 45-day period. *See id.* Accordingly, Hunter's claim that she was removed from her clerk position and replaced by a non-disabled comparator in violation of the Rehabilitation Act is barred from review.

Hunter's other claim — that the USPS terminated her because of her disability in violation of the Rehabilitation Act — is the only one she exhausted.

In rendering summary judgment in favor of the USPS, the district court concluded that Hunter failed to establish a prima facie case of discrimination under the Act because she could not show she was disabled.  We agree.

A person is disabled within the meaning of the Rehabilitation Act if "a physical or mental impairment . . . substantially limits one or more of the major life activities" of that person.  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).[2] Hunter bears the burden of "offering evidence that the extent of the limitation" caused by the impairment is substantial.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007) (internal quotation marks omitted).  She contends, with no evidentiary support, that she has substantial impairments in sleeping, manual tasks, and her general quality of life, including her ability to garden and care for her grandchildren.  These amorphous, unsupported assertions, however, are exactly the kind we have dismissed as insufficient in similar cases. *See id.* (affirming summary judgment when plaintiff put forth no *evidence* to support his assertions of disability); *see also Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004) (holding plaintiffs who claimed their ability to walk, sit, stand, and sleep was "moderately below average" were not disabled).  For this

---

[2]  The standard for determining whether a person is disabled under the Rehabilitation Act is the same as under the ADA.  29 U.S.C. § 791(g).  Congress amended that standard in 2008, but all of the relevant conduct in this case occurred prior to the amendments.  We accordingly use the standards in place before those amendments' passage.

7

reason, the district court correctly rendered summary judgment in favor of the USPS on Hunter's claim that she was unlawfully terminated for her disability.

**AFFIRMED.**